# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL GEORGE HADAM, <br> Petitioner, <br> v. <br> UNITED STATES OF AMERICA, <br> Respondent. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Criminal No. 2:14-00162 <br> Civil No. 2:17-00001 <br><br> Hon. Mark R. Hornak |

## **OPINION**

In a combined change of plea and sentencing hearing held on May 12, 2015, Defendant Michael George Hadam pled guilty to Distribution of Child Pornography in violation of 18 U.S.C. § 2252(a)(2) and was sentenced by another member of this Court to a term of imprisonment of 100 months followed by 15 years of supervised release. ECF No. 59-1 at 10, 37. Now pending before the Court is Hadam's *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on the grounds that he received ineffective assistance of counsel. ECF Nos. 52, 57.

In his § 2255 Motion, Hadam argues that his attorney, Charles LoPresti, was ineffective for a litany of reasons.[1] The United States responds that Hadam's Motion is time-barred by 28 U.S.C. § 2255(f)'s one-year limitations period.[2] ECF No. 59 at 5.

---

[1] Among other things, Hadam says that LoPresti: (1) failed to communicate adequately with Hadam or his sister regarding the case; (2) used "boiler-pressure tactics" to "force" and "coerce" Hadam into accepting the plea deal offered by the United States; (3) misrepresented the sentence Hadam was likely to receive if he pled guilty (by telling him that he might receive a "substantial sentence reduction from the 5-year mandatory minimum"— "probably [] probation or at the most 2 years in prison"); (4) failed to contest Hadam's distribution charge (to which Hadam pled guilty, but which Hadam says he actually wanted to take to trial); (5) failed to argue for a two-point downward departure under U.S.S.G. 2G2.2(B)(1) based on Hadam's lack of intent to distribute; (6) failed to call Dr. Alan Pass to testify at Hadam's sentencing after Dr. Pass spent a year meeting with Hadam and preparing a report; (7) failed to object when the United States "dismissed the report that Dr. Pass prepared"; (8) failed to request a separate hearing concerning unspecified inaccuracies in Hadam's Pre-Plea Presentence Investigation Report; (9) failed to hire a forensic computer expert "to find out what material was actually illegal and what material was not";

After consideration of Hadam's Motion, his briefing and arguments in support, the transcript of the change of plea and sentencing hearing, and the documentary evidence Hadam submitted, as well as the United States' briefing in opposition, the Court will deny Hadam's § 2255 Motion, ECF Nos. 52, 57.[3] No certificate of appealability will issue.

## I. BACKGROUND

At Hadam's change of plea and sentencing hearing, the Court placed him under oath, ECF No. 59-1 at 3, and among other things, the Court engaged with Hadam and with counsel in the following colloquies:

> THE COURT: You are represented here today by Attorney Charles LoPresti. Mr. LoPresti, you have had an opportunity to confer with your client previously this morning. Are you satisfied that he understands what he's doing here today in that he's entering into this process knowingly and voluntarily?
>
> MR. LoPRESTI: Yes, Your Honor.
>
> THE COURT: Mr. Hadam, are you satisfied to have Mr. LoPresti represent you in this matter?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Although, Mr. Hadam, you are charged in a number of counts in this indictment with serious federal offenses, as you stand here this morning, you are presumed to be innocent of those charges, and that means, among other things, that you have certain rights which you have the right to assert here this morning. Those rights include the right to be represented by legal counsel, and you are represented by legal counsel with whom you indicate you are satisfied. You also have the right to have these charges tried by a jury of your peers, and you would

---

(10) failed to turn over files concerning the case (collectively, the "case files") to Hadam or Hadam's sister after the sentencing hearing; (11) failed to subpoena a polygraph examiner to testify at sentencing; (12) failed to arrange for the testimony at sentencing of a licensed Pennsylvania social worker; (13) failed to call Hadam's sister, brother, or daughters, whom Hadam says wanted to testify at sentencing; (14) failed to appeal the sentence imposed after Hadam asked him to do so; and (15) failed to raise other unspecified but "crucial legal issues" pertaining to Hadam's defense. *See* ECF No. 57-3 at 1-2; ECF No. 57-4 at 2-4; ECF No. 60 at 1-6.

[2] The United States also contends that Hadam's claims are vague and conclusory, that LoPresti was not ineffective, and that Hadam was not prejudiced by LoPresti's performance. *See* ECF No. 59 at 8-19.

[3] The Court concludes that no evidentiary hearing is necessary and counsel need not be appointed for Hadam. *See* 28 U.S.C. § 2255(b), (g); *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir.2005).

2

not be subject to any of the penalties that I'm going to be going over with you in a few moments, penalties which I'm sure your lawyer and you have already discussed. You would not be subject to any penalties, unless after a trial by a jury you were found guilty of one or more of the counts against you in the indictment in this case. Do you understand that?

THE DEFENDANT: Yes. Sort of like if I don't take the plea, I'm coerced into whatever.

THE COURT: You are not coerced into anything other than the fact that if you don't take a plea, then you would have the opportunity to have this case tried by a jury, and you would not be subject to any penalties, unless after such a trial a jury finds you guilty of one or more of the charges against you in the indictment in this case. Do you understand that?

THE DEFENDANT: Yes.

...

THE COURT: Do you understand, however, that if you persist in your desire to plead guilty as to Count One of the indictment in this case, you will be found guilty based on your plea of guilt alone? There would be no further trial or hearing to determine the question of your guilt or non-guilt as to Count One of the indictment; that will be foreclosed by your plea of guilt to that count. You would be found guilty based on your plea of guilt alone. There will be a hearing to determine an appropriate sentence, but not to determine the question of guilt or non-guilt as to that count; that will be foreclosed by your plea of guilty. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Knowing all that, it's still your desire to plead guilty to Count One of the indictment in this case?

THE DEFENDANT: Yes.

...

THE COURT: Do you understand that the maximum statutory penalty that could be imposed upon you and the minimum statutory penalty that could be imposed upon you upon a finding of guilt as to the charges set forth in Count One of the indictment is a term of imprisonment of not less than 5 years and it could be as much as 20; a fine not to exceed $250,000; a term of supervised release of not less than 5 years, and it could be for the balance of your life; you could be required to pay restitution; any instrumentalities used in the commission of the crime would be subject to forfeiture by the Government; and you would be required to pay a

special assessment of $100? Those are the maximum and minimal statutory penalties. The actual penalty will be determined by the Court, the Court having received a Presentence Investigation Report, and has filed its memorandum indicating the Guidelines calculation, which it was required to compute based on facts obtained in the Presentence Investigation Report primarily, and it applied those facts to Guidelines promulgated pursuant to the Sentencing Reform Act of 1984 and came up with the Guideline range, which in this case was, what, 155 to 188 months.

MS. SMOLAR:[4] One-fifty-one, Your Honor, to 188.

THE COURT: Then the Court must consider that in an advisory manner in determining an appropriate sentence in this case, which could not be less than the five years that I have indicated to you in the five years of imprisonment and five years of supervised release. . . . Do you understand?

THE DEFENDANT: Yes.

. . .

THE COURT: Other than the promises set forth in a plea bargain entered into in this case on December 2 -- or a plea bargain which is contained in a letter from the United States Department of Justice, United States Attorney for the Western District of Pennsylvania to Mr. LoPresti, your lawyer in this case, a letter dated December 2, 2014, other than the promises set forth in that document, have any other promises been made to you by anybody purporting to be acting on behalf of the United States Government which have induced you in any way to enter a plea of guilty in this case?

THE DEFENDANT: No.

THE COURT: Have any threats been made to you by anybody purporting to be acting on behalf of the United States Government that if you did not enter a plea of guilty to one or more counts of the indictment in this case, that other adverse action will be taken against you or somebody else?

THE DEFENDANT: No.

THE COURT: You have a signed copy of the plea agreement. Is that your signature that appears there, Mr. Hadam?

THE DEFENDANT: Yes.

THE COURT: Did you sign it after having an opportunity to read it and discuss it with your lawyer?

---

[4] Assistant United States Attorney Jessica Smolar. *See* ECF No. 59-1 at 2.

4

THE DEFENDANT: Yes.

THE COURT: Did you sign it voluntarily?

THE DEFENDANT: Yes.

THE COURT: Mr. LoPresti, you have witnessed your client's signature there. Are you satisfied that he signed that knowingly and voluntarily?

MR. LoPRESTI: For the record, Your Honor, I went through it early on, and he signed one, which we have included, and we signed that same document today, yes.

*Id.* at 4-6, 9-10, 12-15.

At this point, Smolar summarized the parties' plea agreement without objection or correction from LoPresti, *id.* at 15-22, and then she recited the evidentiary basis for Hadam's guilty plea, to which LoPresti proposed two factual modifications. *Id.* at 22-26. The Court accepted all of this, including both of LoPresti's proposed modifications, and then accepted Hadam's plea of guilty:

> THE COURT: With those modifications, is the Government's summary of the evidence as it pertains to you accurate? With those modifications?
>
> THE DEFENDANT: Yes.
>
> THE COURT: It's still your desire to plead guilty?
>
> THE DEFENDANT: Yes.
>
> THE COURT: The Court finds that the Defendant's desire to plead guilty to Count One of the indictment is knowingly and voluntarily being made, and there's an adequate factual basis, therefore, the Court will accept the Defendant's plea to Count One of the indictment . . . and finds the Defendant guilty of the charge set forth in Count One of the indictment at Criminal No. 14-162 based on the plea of guilty, and at this time we are prepared for sentencing in this case.

*Id.* at 26-27.

The Court then proceeded to sentencing. Following allocution by Hadam himself, LoPresti on Hadam's behalf, and the United States, the Court set forth its consideration of each of the 18 U.S.C. § 3553 factors, *id.* at 35-37, and ultimately imposed a sentence well below the advisory guideline range:

> THE COURT: . . . The Sentencing Guidelines in this case are 151 to 188 months. That is a substantial sentence. I believe that downward variance, to some degree, is indicated in this case because I believe that the objectives of sentencing can be achieved by a sentence which is below the Sentencing Guidelines, but I do not believe that this is a slap on the wrist type of situation and that the wrong message would be sent to the public if a necessarily lenient sentence were imposed in this case. The Defendant contends that there is no violence in this case. Not on his part, but he is patronizing and enabling and encouraging violence to be performed. Therefore, it is the sentence of the Court that pursuant to the Sentencing Reform Act of 1984, the judgment of the Court is that the Defendant, Michael George Hadam, is hereby committed to the custody of the Bureau of Prisons to a term of 100 months at Count One of the indictment in this case. . . . Upon release from imprisonment, the Defendant shall have supervised release of 15 years.

*Id.* at 37.

Hadam did not file a notice of appeal.

## II.  **LEGAL STANDARD**

Under 28 U.S.C. § 2255, a federal prisoner may collaterally attack an otherwise final sentence if (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence was imposed in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A petitioner bears the burden of demonstrating his right to relief under § 2255. *Randle v. United States,* 954 F. Supp. 2d 339, 349 (E.D. Pa. 2013). A district court may deny a § 2255 motion without an evidentiary hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). In doing so, a district court considering a § 2255 motion "must accept the truth of the

6

movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Booth*, 432 F.3d at 545.

## III. ANALYSIS

Section 2255 imposes a one-year limitations period applicable to Hadam's Motion. Excepting certain enumerated circumstances,[5] the limitations period begins to run when the judgment of conviction became final. 28 U.S.C. § 2255(f). "[A] 'judgment of conviction becomes final' within the meaning of § 2255 on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires." *Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). "If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired." *Id.*

The Court accepted Hadam's guilty plea on May 12, 2015. ECF No. 59-1 at 26-7. Hadam had 14 days to file a notice of appeal, *see* Fed R. App. P. 4(b)(1)(A)(i), but he did not do so. Hadam does not argue that any of the exceptions enumerated in § 2255(f) apply. Thus, unless § 2255's one-year limitations period is equitably tolled, Hadam's judgment of conviction became final and the limitations period began to run on May 26, 2015, and it expired one year after that, on May 26, 2016. Hadam filed his initial § 2255 Motion over seven months later, on January 3, 2017. ECF No. 52.

---

[5] The one-year limitations period begins to run when the judgment of conviction becomes final unless (1) the government caused the defendant to miss the deadline, (2) the Supreme Court thereafter recognized a new right and/or made that right retroactively applicable on collateral review, or (3) it took more than one year from when the judgment became final to discover facts supporting the claim. *See* 28 U.S.C. § 2255(f).

Hadam asks the Court to toll § 2255's one-year limitations period under the equitable tolling doctrine. "[C]ourts must be sparing in their use of equitable tolling." *Jones v. Morton,* 195 F.3d 153, 159 (3d Cir. 1999). A court may toll the federal habeas limitations period where "the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.'" *Miller v. New Jersey State Dep't of Corr.,* 145 F.3d 616, 618-19 n.1 (3d Cir. 1998). Establishing entitlement to equitable tolling of § 2255's limitations period requires a showing that (1) the petitioner has been diligently pursuing his rights, and (2) some extraordinary circumstance stood in the way of timely filing. *United States v. Doe,* 810 F.3d 132, 150 (3d Cir. 2015) (quoting *Holland v. Florida,* 560 U.S. 631, 649 (2010)).

In support of his equitable tolling argument, Hadam says that—to this day—his attorney, Charles LoPresti, has failed or refused to turn over Hadam's case files either to Hadam or to his sister, Susan White.[6] ECF No. 57-2 at 2; ECF No. 57-3 at 1; ECF No. 57-4 at 4-5. This despite the fact that, according to Hadam, "my sister and I have diligently tried to contact attorney Lopresti to retrieve my files" "[t]hroughout all the year of 2016." ECF No. 57-4 at 4.

As to Hadam's personal efforts to contact LoPresti, Hadam says that he tried to locate LoPresti through the Pennsylvania Bar Association, but he could not find LoPresti's current address or phone number. ECF No. 57-4 at 4-5. According to Hadam, when he was finally able to get in touch with LoPresti on one occasion, LoPresti stated that under no circumstances would he return Hadam's case files. *Id.* at 4.

As to Susan White's attempts to contact LoPresti, Hadam says that when White asked for a copy of the case files, LoPresti responded that he would only release the case files if Hadam

---

[6] Hadam says that he gave White responsibility for handling his legal matters. ECF No. 57-2 at 1. Attached to Hadam's Motion is a copy of what appears to be a Durable Power of Attorney form appointing "Susan White or Rebeca Hadam or Mark Hadam" as Hadam's agent in such matters and specifically granting them the ability to "obtain all [Hadam's] records [and] billing statements." ECF No. 57-15 at 1-2. The form is dated August 13, 2013 and bears a signature that reads "Michael G. Hadam." *Id.* at 2.

8

"would sign a statement absolving [LoPresti] of all liability" in this case. ECF No. 57-3 at 1-2; *see also* ECF No. 57-4 at 4. Hadam suspects this was because LoPresti knew that Hadam was going to file a complaint with the bar association. ECF No. 57-4 at 4.

Hadam submitted a variety of documentary evidence to support his factual assertions. First up is a signed, notarized affidavit dated January 20, 2017 and purportedly authored by White. ECF No. 57-5. In it, White says that beginning on May 13, 2015, she sent 4 requests to LoPresti for Hadam's case files with a copy of the power of attorney form, but she has not received the case files. *Id.* at 7. White also claims that she filed a complaint with the bar association in October of 2015, but she received a response that LoPresti was no longer admitted to practice. *Id.* at 7.

Next up is a copy of what appears to be White's complaint to the Allegheny County Bar Association, *see* ECF No. 57-10 at 1-6, along with a response. ECF No. 57-14. In the complaint, White again says that she sent LoPreseti a copy of the power of attorney form and 4 letters asking for Hadam's case files, but she never received them. ECF No. 57-10 at 5. White also says that Hadam sent LoPresti a communication asking him to releases the case files, but LoPresti did not do so. *Id.* The Allegheny County Bar Association replied to White's complaint by stating that LoPresti was not an active member. ECF No. 57-14.

Also attached to Hadam's Motion are a number of letters that appear to be correspondence between Hadam, White, and LoPresti concerning the release of Hadam's case files. In the first correspondence that Hadam included, dated May 19, 2015, White writes to LoPresti saying she is "trying to sort all the documents in reference to this case" and that she needs "an itemized bill." ECF No. 57-10 at 8. She concludes, "[I]f you need Michael's approval, just let us know and it will be forthcoming." *Id.*

9

In the second correspondence, also dated May 19, 2015, Hadam (purportedly[7]) writes to LoPresti giving him "permission to release all records and itemized bills pertaining to my case . . . as soon as possible." ECF No. 57-12 at 2. Hadam states, "My daughter Rebeca will be available to pick everything up." *Id.*

In the third correspondence that Hadam included, dated June 18, 2015, White writes to LoPresti again: "This is my third and final attempt to contact you about my brother, Michael's request for his records and copy of all bills. We have sent the letter signed by Michael to allow his daughter Rebeca, to pick up his entire file. . . . As you have my brother, Michael's signed consent, there should be no reason not to comply." ECF No. 57-10 at 10.

In the fourth correspondence, dated June 24, 2015, LoPresti responds to White: "I have responded to each of your requests. First, I responded that I needed something in writing by Michael in order to share anything in his file with anyone else. Secondly, I wrote directly to Michael asking him to provide a letter in his own handwriting from the Federal Institution where he is housed and asked him to be specific about what he wanted from me since he is in possession of his file, all of our correspondence, the discovery, and the restitution documents. . . . I am currently waiting for a response in his own handwriting to that effect." ECF No. 57-12 at 3. LoPresti goes on to explain that Hadam's case files are confidential, and he expresses suspicion about whether Hadam was the one who authored the May letter authorizing the release of the case files.[8] *Id.* LoPresti concludes, "out of respect for [Hadam's] client privilege and in the protection of his privacy and because he is already in possession of all of the items requested, I

---

[7] Record evidence suggests that LoPresti had serious doubts about whether this second correspondence was written or signed by Hadam. *See* ECF No. 57-12 at 3. He later sought to verify the authenticity of Hadam's letter. *See id.*

[8] In particular, LoPresti notes that White and Hadam's first two letters were signed on the same date, that Hadam's signature does not look "entirely consistent with his previous ones," and that Hadam "would not have access to type the letter which was signed but sent from your address and not the institution." ECF No. 57-12 at 3.

10

will await his written response to my direct correspondence sent just after we received the typed, similarly worded and same day dated as your first letter to our office." *Id.*

In the fifth correspondence, dated July 23, 2015, LoPresti responds directly to Hadam, "I received your recent letter verifying your signature on a letter I received from your sister. Therefore, before I can release your files, enclosed please find a Release formally permitting me to release your records. Kindly sign and return this Release to me. Once I receive this Release, I will make arrangements for pick up of your file." ECF No. 57-12 at 1.

In the sixth correspondence that Hadam included, which is undated, Hadam writes to "Sue" (presumably his sister, Susan White). He says, "Here is the release form LoPresti sent me. I signed it and dated it August 9th. If your lawyer says it's ok, seal it and send it." ECF No. 57-8 at 1.

In the final correspondence that Hadam included, dated August 27, 2015, White writes to LoPresti and again requests "all of the documents in Michael Hadan's file" and states she has "attached for your records a copy of the Power of Attorney signed by Michael Hadam giving me the authority to request and obtain the above documents." ECF No. 57-10 at 7, 11. White continues, "[p]lease let me know as soon as the records are available so I can make arrangements for either Rebeca (Michael's daughter) or Mark to pick them up." *Id.* at 11.

The one-year limitations period applicable to Hadam's Motion expired on May 26, 2016. The record contains no additional correspondence after the August 27, 2015 letter. Notably, none of the correspondence to LoPresti appears to have included the release form that LoPresti asked Hadam to sign and return.

On these facts, the Court concludes that Hadam has not met the exacting standard required for the Court to equitably toll the § 2255 limitations period—a showing that he has been

11

"diligently pursuing his rights" but was thwarted by "some extraordinary circumstance." *Doe*, 810 F.3d at 150. The letters exchanged by Hadam, White, and LoPresti undermine Hadam's claims that he and White could not get in contact with LoPresti and that LoPresti failed or patently refused to release his case files.

As to Hadam's contention that he and White could not get in contact with LoPresti after the sentencing, the letters exchanged between Hadam, White, and LoPresti reveal the opposite: LoPresti appears to have been in regular contact with both Hadam and White. White sent at least 4 letters to LoPresti, which were addressed to what appears to be LoPresti's address on Coal Valley Road in Jefferson Hills, Pennsylvania. ECF No. 57-10 at 7, 8, 10, 11. A letter from Hadam to LoPresti is addressed to the same Coal Valley Road address. ECF No. 57-12 at 2. White listed the same Coal Valley Road address for LoPresti on a request to arbitrate form. ECF No. 57-13 at 1. White also included two phone numbers, a fax number, an email address, and what appears to be a bar number. *Id.*

Hadam's and White's attempts to contact LoPresti at this address were successful. LoPresti sent Hadam a letter with a copy of the sentencing court's judgment in June of 2015. That letter included LoPresti's Coal Valley Road address, phone number, fax number, and email. ECF No. 60-10 at 1-2. White and/or Hadam received two invoices for LoPresti's legal services— one in June of 2014, the other in March of 2015. ECF No. 57-11 at 6-7. The invoices include LoPresti's same Coal Valley Road address and phone number. *Id.* LoPresti also responded by letter at least twice: once to White in June of 2015, and once to Hadam in July of 2015. ECF No. 57-12 at 1, 3. LoPresti's responses include the Coal Valley Road return address, phone number, and fax number. *Id.*

Hadam's contention that he and White could not get in contact with LoPresti during 2016 (either because LoPresti changed his address or simply stopped responding) is equally unsupported. The record is devoid of documentary evidence that Hadam or White tried, diligently or otherwise, to contact LoPresti at his Coal Valley Road address, his phone numbers, his fax number, or his email address.[9] Hadam has produced no certified mail receipts, no unanswered letters to LoPresti, no mail returned to sender, no phone records, no notes memorializing attempts to reach LoPresti, and no other details in any form regarding such attempts. Besides Hadam's and White's bare assertions to the contrary, there is simply no evidence that Hadam or White attempted to reach LoPrest during the 9-month period between White's last letter to LoPresti in August of 2015 and the date when the limitations period was set to expire in May of 2016, or that either of them tried and failed to contact LoPresti between May of 2016 and the filing of the instant § 2255 Motion.[10]

As to the communications that Hadam, White, and LoPresti did exchange, the record is clear that Hadam and White failed to sign and return the release form requested by LoPresti to secure the release of Hadam's case files to White. LoPresti wrote to White in June of 2015—11 months before the limitations period was set to expire—explaining that he was waiting for a handwritten verification from Hadam, sent from Hadam's address in federal custody, authorizing the release of the case files to White. ECF No. 57-12 at 3. LoPresti then wrote to Hadam in July of 2015—10 months before the limitations period was set to expire—requesting that Hadam sign the release form. *Id.* at 1. Yet Hadam readily concedes in his filings that he failed to return the

---

[9] The Court would also note that the address and one of the phone numbers that Hadam and White had for LoPresti are identical to those that turned up when Court staff conducted a Google search for "Charles LoPresti attorney" on June 16, 2017.

[10] To the contrary, the record is replete with examples of Hadam's and White's delay in pursuing this appeal. White apparently did not attempt to request a transcript of Hadam's sentencing, for example, until May 12, 2016—two weeks before the one-year limitations period in Hadam's case was set to expire. *See* ECF No. 60-8 at 1.

release form to LoPresti. In his § 2255 Motion, Hadam says he "never sent" the "release form" "to attorney LoPresti." ECF No. 57-2 at 1. Instead, Hadam sent the release to his sister, White, for her lawyer to review and approve. ECF No. 57-8 at 1.

White likewise never claims to have forwarded the release form to LoPresti. Hadam directs the Court to what he says is his "sister Susan White's handwriting" on the release form. White wrote directly on the release form, "Never sent to Atty. LoPresti. Sent back to Michael to cross out . . . [illegible] . . . initial." ECF No. 57-8 at 2. The release form bears Hadam's signature and a date in August of 2015—9 months before the limitations period was set to expire. *Id.* But Hadam's signature and the date have been crossed out (just as it appears White instructed him to do), and Hadam's initials appear next to the crossed out signature. *Id.* So not only does Hadam concede that the release form never reached LoPresti, it also appears that Hadam has attempted to rescind his acquiescence to its terms. *Id.*

Hadam attempts to explain away his failure to send the release form to LoPresti by characterizing it as an unreasonable release that would "absolv[e]" LoPresti "of all liability" in Hadam's case.[11] ECF No. 57-3 at 1-2. But the text of the form itself belies Hadam's characterization of it as a general liability waiver. The release merely states, "I release and forever discharge Attorney Charles R. LoPresti from any and all responsibilities and/or liability **for the release of this information** to my sister Susan White and to my daughter Rebecca or any persons that this information is shared with by them regarding any information that they may come across in my files and documents." ECF No. 57-8 at 2 (emphasis added). Given the confidential nature of Hadam's case files and the fact that Hadam wanted them sent to a third party, along with LoPresti's initial suspicions regarding whether Hadam himself had given such

---

[11] Hadam understandably would not have wanted to do that because he was apparently planning to file a complaint against LoPresti with the bar association (and White appears to have filed such a complaint). ECF No. 57-4 at 4; ECF No. 57-10; ECF No. 57-14.

14

authorization, the Court concludes that LoPresti's request that Hadam sign the release form is not at all unreasonable. It certainly did not amount to an extraordinary obstacle.[12]

The Court therefore concludes on the facts of this case that Hadam has not met the exacting standard required for equitable tolling of the § 2255 limitations period: a showing that he has been "diligently pursuing his rights" but was thwarted by "some extraordinary circumstance." *Doe*, 810 F.3d at 150. Hadam's § 2255 Motion is barred by the one-year limitations period, and his claims for relief therein will be denied.

## IV.    CERTIFICATE OF APPEALABILITY

To pursue an appeal from a final order in a § 2255 proceeding, a petitioner must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability "may issue only upon 'a substantial showing of the denial of a constitutional right.'" *Michael v. Horn*, 459 F.3d 411, 418 n. 9 (3d Cir. 2006) (quoting 28 U.S.C. § 2253(c)(2)). When the denial of a § 2255 motion is based on the merits of the claims, the petitioner is required to show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Given the facts noted above, the Court concludes that reasonable jurists would not debate the denial of Hadam's Motion under § 2255's one-year limitations period and therefore declines to issue a certificate of appealability.

---

[12] In the Court's view, Hadam's admission that neither he nor White sent LoPresti the release form for his case files together with the absence of evidence of any attempts to contact LoPresti after August of 2015 are dispositive as to the issue of Hadam's diligence in pursuing his claims. Hadam and White don't even agree about the reason for the delay in filing the instant Motion. White attributes it not to LoPresti but to her own struggle to find a lawyer who would take Hadam's case. *See* ECF No. 60 at 4.

The Court would also note that neither Hadam nor White has explained how raising any of Hadam's substantive ineffective assistance of counsel arguments required access to any case file in LoPresti's possession. Hadam has now placed before the Court at least 15 different grounds for ineffective assistance of counsel without (according to him) access to the very case files that he says were necessary to raise those very claims at an earlier date.

## V. CONCLUSION

For the reasons set forth above, Hadam's § 2255 Motion (ECF Nos. 52, 57) is denied. No certificate of appealability will issue.

*[signature]*

Mark R. Hornak
United States District Judge

Dated: June 30, 2017

cc: All counsel of record
    Michael George Hadam, via U.S. Mail